(No. 28095.—

CHICAGO GRAIN TRIMMERS ASSOCIATION, Appellant, *vs.* FRANCIS B. MURPHY, Director of Labor, Appellee.

*Opinion filed January 17, 1945.*

ROBERT BRANAND, JR., of Chicago, for appellant.

GEORGE F. BARRETT, Attorney General, (WILLIAM C. WINES, of Chicago, of counsel,) for appellee.

Mr. JUSTICE GUNN delivered the opinion of the court:

This case involves an assessment made by the Director of Labor under the provisions of the Unemployment Compensation Act against the appellant, Chicago Grain Trimmers Association, in the amount of $17,758.32 for contributions, interest and penalties for a period beginning in 1937 and ending in 1941. The decision was reviewed by the circuit court of Cook county on *certiorari,* and the decision of the Director of Labor duly affirmed. Appellant appeals directly to this court in accordance with the provisions of the statute.

The principal questions involved concern whether or not the Chicago Grain Trimmers Association is such a

legal entity as to be an employer under the Unemployment Compensation Act, and whether or not the so-called individual members of the association are employees of the association. The appellant urges that Chicago Grain Trimmers Association is not a legal entity but merely a common enterprise of a number of individuals to arrange for their employment. The appellee contends that the association is engaged in a business as a separate legal entity, and employs individuals to do the work necessary to perform its contracts.

The Chicago Grain Trimmers Association appears to be a voluntary, unincorporated group of people using the name for their common purpose. There is no written charter agreement or rules which govern the activities of the association or the rights of its members. The business affairs are handled exclusively by William J. Mayer, who has the title of secretary and treasurer. The association is closely associated with Local No. 101 of the American Federation of Labor and the International Longshoremen's Association. The individual members of the association are grain trimmers, whose work consists of loading and unloading bulk grain in barges and ships. This labor must be performed in a careful manner in order to maintain proper balancing of the vessel, and to prevent breaking or straining of bulkheads. The association is composed of twenty-two regular members including William J. Mayer, each of whom has contributed the sum of $218 to a working capital, which sum is returned to a member when he withdraws, or is paid to his family in the case of his death. The principal purpose of the working capital fund is to enable the association to make a distribution of earnings each week, even though payment for the work has not yet been received.

In addition to the twenty-two regular members of the association, there is a group of men who have not contributed to the capital fund and who are variously known

as "limited members" or "outsiders." These men have no interest in the capital fund but may from time to time be called in by the association to work on a grain trimming job. In such case they are compensated in exactly the same manner as the regular members.

The business affairs of the association are handled exclusively by Mayer, who rents an office in the name of the said association and carries a telephone listing in its name. A policy of workmen's compensation insurance is carried in the name of the association. It has fixed rates for handling grain on the basis of a certain charge per thousand bushels. Arrangements for the loading of grain are made between the shipowner and Mayer and the rate per thousand bushels agreed upon. Mayer then selects the men from the regular or limited members of the association to do the job. At the end of each week, Mayer, after paying any overhead expenses, makes a division of the money earned among the members who worked during the week, the division being in proportion to the amount of time worked by each man, the limited members receiving the same compensation as the regular members, Mayer receiving one share for his services as representative of the association. Any stenographic or secretarial assistance required by Mayer is paid by him personally.

Agreements in regard to grain loading are made in the name of the association by Mayer. The elevators or shipowners make payment in the name of the association, which money is deposited in the association's bank account. The master in charge of a barge or vessel has control over the manner of loading of the grain but has no authority to specify the individual or the number of men who are to perform the labor.

The shovels and other tools used by the workers were purchased by the association, which also paid the dues due the union by the union members and the work-permit fees for nonmembers. A partnership income tax return was

filed by the association showing the income received and the expenses paid and the payments made to the workers.

Section 2(d) of the Unemployment Compensation Act (Ill. Rev. Stat. 1943, chap. 48, par. 218) defines "employing unit" as follows: "'Employing unit' means any individual or type of organization, including any partnership, association, trust, estate, * * * which has or subsequent to January 1, 1936, had in its employ one or more individuals performing services for it within this State." Section 2(e) defines an "employer" as an "employing unit" which has had in its employ a specified number of individuals during a specified time. This qualification would be met under the facts in this case if the association is regarded as an employing unit and the members as employees. Section 2(f)(1) defines "employment" as follows: "Subject to the other provisions of this subsection, 'employment' means any service performed prior to July 1, 1940, which was employment as defined in this section prior to that date, and any service after June 30, 1940, performed by an individual for an employing unit, * * *." Section 2(g) defines "wages" as "every form of remuneration for personal services, including salaries, commissions, bonuses, and the reasonable money value of all remuneration in any medium other than cash."

In a general sense, an association is a body of persons acting together, without a charter, for the prosecution of a common enterprise. In *People* v. *Brander,* 244 Ill. 26, we designated the term "association" as "a word of vague meaning, used to indicate a collection of persons who have joined together for a certain object." And in *Roach & Co.* v. *Harding,* 348 Ill. 454, we said: "The term 'association' is used to designate a body of persons acting together without a charter but on methods and forms used by incorporated bodies for the prosecution of some common enterprise. The term does not have, in law, a fixed meaning such as is accorded to partnerships or corporations but is

used to indicate a collection of persons who have joined together for a certain object. Our statute does not contain a definition of an association. It has, however, been defined in Bouvier's Law Dictionary (vol. 1, 269) as persons uniting together for some purpose. Black's Law Dictionary defines 'association' as the act of a number of persons who unite or join together for some special purpose or business; 'the union of a company or business for the transaction of designated affairs or the attainment of some common object.' "

Some associations may be incorporated under applicable statutes, in which event they are legal entities having such attributes as the statute may give them. In the absence of a statute empowering it to do so, an unincorporated association having no legal existence independent of the members who compose it, is ordinarily incapable, as an organization, of taking or holding either real or personal property in its associate name. (5 C. J. 1343.) In the absence of statutory authority, an unincorporated association has no capacity to enter into contracts in its associate name. However, the officer who makes such a contract and the members who assent to it may be personally bound. The dealing with an association as a legal entity may, under certain circumstances, cause it to be estopped from denying its right to contract. (5. C. J. 1345.) In *Butler Mfg. Co.* v. *Department of Finance*, 383 Ill. 220, we said: "We recognize the general rule that an unincorporated association does not have legal existence, independent of the members who compose it, which will permit it to take title to personal property in its own name, but the right of such an association to take title to property in its own name may be authorized by statute."

It is argued by appellee that the Chicago Grain Trimmers Association is engaged in a business for profit and must be treated as a legal entity and an employer under the Unemployment Compensation Act. No statute has

been brought to our attention which gives this unincorporated association an existence as a legal entity separate and apart from its members. As a legal matter, it has no separate existence from its members, but, as a practical matter, such an association of individuals may, for some purposes, carry on business in a common name similar to that of a corporation which constitutes a legal entity.

In the instant case the members of the association have only one source of income, and that is derived from the capacity of its members to labor. The association is not in business for the purpose of acquiring profit upon the use of the capital contributed by its members or upon the labor of its members. The obvious and real purpose of the common enterprise is to provide a practical means of disposing of the services of its members and of dividing the earnings of the working members. It appears grain trimming is an occupation which must be conducted by a group of men in order to satisfactorily handle a job. A shipowner requires the services of such a group only during the comparatively short interval necessary for the loading and unloading of a ship. In all probability it would be expensive or impracticable to continuously employ the number of grain trimmers necessary to load or unload the ship with reasonable dispatch. Thus from the very nature of the occupation it would appear some workable arrangement is necessary for the calling of the proper number of men at the proper times to effectually do the work.

We are of the opinion the association is not the employer of its members, but merely a convenient device for allocating work among its members in groups which can efficiently perform the various loading jobs as they present themselves, and which can in a convenient and practical manner divide the earnings of the members in accordance with their individual efforts. We can see no distinction between the "regular" and the "limited" members in this

respect. We do not regard the manner of settlement with the shipowners as of controlling importance.

In *New York Life Ins. Co.* v. *Murphy,* 388 Ill. 316, we said: "two elements are essential to the operation of the statute: (1) there must be an employing unit; and (2) services must be performed by an individual for an employing unit." This requires two parties to make the statute operative, not one represented by two capacities. Where, as here, the association is composed of employees and its function is solely to facilitate insuring working groups and to provide means for prompt and regular payment of wages, the "employing unit" requirement is absent, because both the association and the workers are rendering·the services to the same end and purpose. One of the essential requirements to make the statute operative being absent, the Director of Labor was without authority to make the assessments.

Under the facts as presented, the association has no separate legal entity distinct and apart from its members. Its sole activity involves the labor of its members, the entire returns of which are divided equally among working members on the basis of time worked. We are of the opinion the members are not employed by the association under the provisions of the Unemployment Compensation Act. To hold otherwise would, under the facts presented, be placing the entire burden of the contributions to the insurance fund upon the group of working men.

The judgment of the circuit court quashing the writ of *certiorari* is reversed and said cause is remanded, with directions to quash the return of the Director of Labor.

*Reversed and remanded, with directions.*