**Seymour Stein and Mollie Kronenberg, Individually and as Trustees for the Steinco Syndicate, Plaintiffs-Appellants, v. Twilight Motel, Inc., of Florida, a Corporation, Morris Alters, Harold Beider and Louis Grombacher, Defendants-Appellees.**

**Gen. No. 48,113.**

First District, Second Division.

February 21, 1961.

131

Sonnenschein, Lautmann, Levinson, Rieser, Carlin & Nath, of Chicago (James M. Goff, of counsel) for appellants.

Koven, Koven, Salzman & Homer, of Chicago (Sheldon O. Collen, of counsel) for appellees.

MR. PRESIDING JUSTICE BURKE delivered the opinion of the court.

This appeal involves an action to recover the purchase price of securities sold to plaintiffs in the alleged violation of the Illinois Securities Law of 1953. Defendants moved for summary judgment on the ground that the sale to plaintiffs was an exempt trans-

action under Section 4(C) of that Act as a sale to an "association engaged as a substantial part of its business or operations in purchasing or holding securities." Sec. 137.4(C), Ch. 121–½, Ill. Rev. Stat. 1959. The court granted the motion and entered judgment for the defendants. Since a second count and a counterclaim remained, the judgment included an express finding that there was no just cause for delaying enforcement or appeal thereof. Plaintiffs appeal from the judgment.

In September 1957, defendants Harold Beider and Morris Alters contacted plaintiff Seymour Stein and offered to sell him securities issued or to be issued by the corporate defendant, Twilight Motel Inc. of Fla. Over a period of time they made various efforts to induce Stein to purchase the securities. According to Stein they offered him "everything under the sun," including a part of their management income from the corporation. Stein agreed to purchase 13 so-called "points" in the corporation and on November 11, 1957, a deposit of $4,000 was made. On December 18, 1957, an additional $13,500 was paid and a management contract signed, under the terms of which Alters and Beider agreed to pay Stein one-third of any gross income received by them from the corporation for management services. On February 28, 1958, the corporate defendant issued and delivered to Stein and his sister, plaintiff Mollie Kronenberg, certificates for 565½ shares of its $10 par value capital stock and its debenture notes in the principal amount of $17,095. These securities were issued in consideration for the $17,500 which had been paid. The sale was made in Chicago and all of defendants' acts in making, or aiding in making the sale, took place there. The securities were not registered with the Secretary of State pursuant to Section 5 of the Illinois Securities Act prior to the sale thereof in this state. On or about June

27, 1958, plaintiffs elected to declare the sale null and void as in violation of the state securities law and gave defendants notice of their election. Defendants did not repay the $17,500 and plaintiffs brought suit to declare the sale null and void and to recover the purchase price of the securities, together with interest and attorneys' fees.

In their answer defendants allege that the failure to register these securities was not a violation of the statute because this sale was an exempt transaction within the purview of Section 4(C) of the Act. After the case was at issue defendants took the discovery deposition of Stein and thereafter propounded interrogatories to plaintiffs. From the deposition and answers to the interrogatories it appeared that the funds used to purchase the securities did not belong to plaintiffs alone but had come from a family investment fund called the Steinco Syndicate. In November 1956, Seymour Stein, Max Stein and Milton Stein, his brothers, Mollie Kronenberg, his sister, and Max Kronenberg, his brother-in-law, entered into a joint venture agreement wherein each undertook to make contributions to a fund, the proceeds of which were to be invested "in bonds, stocks or other securities or real estate, or any other thing of value." The fund created by contributions from the members of the Stein family group under the joint venture agreement had, for convenience, been called the Steinco Syndicate. None of the contributors to the fund is engaged in the securities or investment business. All of them, except Mollie Kronenberg, are employed in businesses which manufacture wool shoddy. She is a housewife.

Defendants dealt with Seymour Stein in the sale of these securities. The securities were issued in the name of Seymour Stein and his sister. The funds which Stein used to make the purchase were not solely his but came from the family investment fund.

134

Thus he was not dealing with defendants on his own behalf but for his family. He testified that he was acting for the Steinco Syndicate. Prior to the transaction in issue, funds from the family investment fund had been used for a loan to purchase an interest in two collateral installment notes, to purchase securities of a motel corporation in which defendants Alters and Beider were involved, and to purchase an interest in a conditional sales contract.

Sections 5, 6 and 7 of the Securities Act require the registration with the Secretary of State of securities, face-amount certificate contracts and investment fund shares prior to the sale thereof in this state. Section 4(C) states that the provisions of Sections 5, 6 and 7 of the Act shall not apply to the sale of securities to any corporation, bank, savings institution, trust company, insurance company, building and loan association, dealer, pension fund or pension trust, employees' profit sharing trust or to "any association engaged as a substantial part of its business or operations in purchasing or holding securities, or to any trust in respect of which a bank or trust company is trustee or co-trustee." By Section 11 the administration of the Act is vested in the Secretary of State.

Plaintiffs urge that this was not a sale to an association engaged as a substantial part of its business or operation in purchasing or holding securities within the meaning of Section 4(C) of the Act; that this section exempts sales to the so-called "sophisticated" investor from the operation of the Act; and that the legislature thereby intended to eliminate the giants of the investment world, for whom the protection of the Act would be useless. They assert that at most their syndicate is a joint venture by the members of a family for the purpose of investing money. They concede that the joint venture is an "association" within the broad definition of that term, citing Roach

135

& Co. v. Harding, 348 Ill. 454, 181 N. E. 331. Plaintiffs argue that the word "association" was not used in its usual sense, invoking the doctrine of ejusdem generis. They insist that the term "association" be limited to the same kind of institutional investors as those specifically enumerated and should not be construed to include wholly different classes of investors such as family investment groups. Finally, plaintiffs point out that not a single member of the Stein group is engaged as a substantial part of his or her business in purchasing or holding securities, or that any of them has ever engaged in the purchase of securities except collectively through the family investment fund.

■ ■ The Illinois Securities Law is intended to protect the public and particularly the innocent investor from the "dishonesty, incompetence, ignorance and irresponsibility of persons engaging in the business of disposing of securities of uncertain value whereby the inexperienced and confiding are likely to suffer." Foreman v. Holsman, 10 Ill.2d 551, 553, 141 N.E.2d 31; Group Securities, Inc. v. Carpentier, 19 Ill.App.2d 513, 511, 154 N.E.2d 837. "The Act is paternalistic in character and should be liberally construed to better protect the public from deceit and prevent fraud in the sale of stocks, bonds and other securities within the state." Meihsner v. Runyon, 23 Ill.App.2d 446, 456, 163 N.E.2d 236.

■ We do not think that the legislature used the term "association" in some restrictive way instead of in the general way it has always been used. The essential characteristic is merely the acting together by a group or body of persons without a charter for prosecution of a common purpose. People v. Brander, 244 Ill. 26, 31, 91 N. E. 59; Roach & Co. v. Harding, 348 Ill. 454, 464, 181 N. E. 331; Chicago Grain Trim-

136

mers Ass'n. v. Murphy, 389 Ill. 102, 106, 58 N.E.2d 906. In the case at bar the ejusdem generis doctrine does not help plaintiffs. Section 4(C) exempts the sale of securities to "any corporation," etc. There are many corporations doing business in Illinois varying in size from the one or two man thinly capitalized businesses to the publicly held companies. The legislature did not see fit to distinguish in kind among corporations for the purpose of Section 4(C) and there is no reason to believe that it intended to distinguish among "associations" to be included for the purposes of that section. For the purposes of Section 4(C) it must be assumed that "any corporation" or any "association engaged as a substantial part of its business or operations in purchasing or holding securities" is sufficiently knowledgeable to enter into an arms length transaction.

█ We are satisfied that the record establishes that plaintiffs in their operations as the Steinco Syndicate were an association engaged as a substantial part of its business or operations in purchasing or holding securities. The history of the syndicate operations shows a series of patently sophisticated investments. It was formalized by a joint venture agreement. They were represented by able counsel. It is true that the individual members are not engaged in the securities or investment business. However, as a group they formed an association which engaged as a substantial part of its business or operation in purchasing or holding securities. To look to the principal business of each member of the syndicate to determine the nature of the syndicate's business would tell us about the business of each member, but not about the business of the syndicate. We are of the opinion that the court was right in deciding that the plaintiffs in their activities as the Steinco Syndicate

were an association engaged as a substantial part of its business or operations in purchasing or holding securities within the meaning of Section 4(C) of the Securities Act. Therefore the judgment is affirmed.

Judgment affirmed.

FRIEND, J. and BRYANT, J., concur.