PER CURIAM.
By certiorari, as provided for in § 443.08 (3) (i) 1, Fla.Stat, F.S.A., we have for review a decision of the Florida Industrial Commission under the Unemployment Compensation Law. The problem presented was whether the petitioner union should be classed as an employer under the Act with reference to the part time services to it by employees of the telephone company. The commission held the statute applicable, in the circumstances presented. The facts involved and contentions and arguments of the parties were set forth in the opinion prepared and filed by the commission, which we here quote from, as follows:
“This cause came on to be heard on the subject employing unit’s protest of the Commission’s determination of unemployment compensation tax liability.
“The issues herein are:
“1. Whether the Union members other than the full-time president and full-time office secretary are employees of Communications Workers of America, Local 3107, within the meaning of Chapter 443, Florida Statutes.
“2. Whether the Communications Workers of America, Local 3107, is a liable employer within the meaning of Section 443.03(7) (a) 2 [443.03(7) (a)], Florida Statutes.
“The Union is a labor organization, which is the bargaining agent for the employees of Southern Bell Telephone and Telegraph Company. The Union and the Company have entered into a bargaining agreement containing the hours, wages, and working conditions of said employees.
“Since January 1, 1958, the Union has employed a full-time president and full-time office secretary to perform various services for the Union. Both the full-time president and office secretary have been paid wages by the Union derived from checks from the Unit’s International constituting a refund of a portion of the Union dues which the Union members have paid in the form of deductions from their payroll checks from Southern Bell. When employed full time by the Union, neither the office secretary nor the Union president have been employed or paid wages by Southern Bell. The Union president does receive accrued seniority from Southern Bell when employed by the Unit since he is on leave status with Southern Bell during his employment by the Union.
*753 “The Union has a federal employer identification number and as such deducts and reports all Social Security and withholding taxes to the Federal Government with respect to wages paid by it to the full-time president and office secretary.
“Since January 1, 19S8, various Union members have performed services for the Union on a part-time basis while employed full time by Southern Bell.
“Prior to performance of any of these services, approval must be secured from Southern Bell in accordance with provisions of Section 26.01 A and 26.04 of the Bargaining Agreement. The particular services or activities to be performed for the Unit by any part-time Union worker are determined by the Union Executive Board and membership and necessary committee assignments are made by the president — subject to approval of Board and membership. Committee members may also be removed by the Board or membership. The duties performed by the part-time Union workers are subject to the direction and control of the Union’s Executive Board.
“Union members performing part-time services for the Unit are also reimbursed for such services from the Union dues refund checks. All payments are equivalent to pay for time lost from their jobs with Southern Bell and approval of the Unit’s president is necessary prior to payment.
“Social Security and Withholding taxes were deducted by the Unit from all of the payments made to the part-time Union workers and reported by it to the Federal Government. The Unit furnished its workers with W-2 Forms listing wages and deductions for each year. The Unit matched the amounts deducted for Social Security and forwarded same to the Federal Government. No refunds for such payments were made to the Union by the Federal Government.
“Southern Bell deducted and reported Social Security on taxable wages of these workers up to the maximum of $4800 when earned in full-time employment with Southern Bell.. Southern Bell also paid unemployment compensation contributions to the Florida Industrial Commission’s Unemployment Compensation Fund on the taxable wages of the part-time Union workers up to a maximum of $3000 per year. Taxable wages of these workers fell below the $3000' maximum in several instances due to-resignations, dismissals, transfers,, leaves of absences and sickness.
“Since December 19, 1962, the Unit has secured workmen’s compensation insurance coverage for its members. It also has an Owners’, Landlords’ and Tenants’ Liability Insurance Policy, effective March 10, 1961, which makes the insurance carrier liable for damages for bodily injury or property damage which the Unit would be legally obligated to pay as a result of accidents occurring on the Unit’s business premises or headquarters.
“It is hereby found that all of the Union members who performed part-time services for the Union since-January 1, 1958, were employees of the-Union, if remunerated for such services.
“It is further found that since January 1, 1958, the Unit has been an; employer liable for the payment of unemployment compensation contributions within the meaning of Section 443.03(7) (a) 2 [443.03(7) (a)], Florida Statutes. See: International Union, United Automobile, Aircraft and Agricultural Implement Workers v. [Industrial] Comm. (S.Ct.Wis.1964) 248 Wis. 364, 21 N.W.2d 711 (1946).
*754 “Perhaps the Unit’s main objection to its liability is the fact that in most instances Southern Bell pays unemployment compensation contributions on the maximum of $3000 of taxable wages received by the part-time Union workers required by the law (See Section 443.03(13) (b), F.S.). This objection is not valid for reasons discussed below.
“The part-time Union workers in this case stand in the same position as any other workers who are employed full time by one employer while employed part time for part-time wages by a second employer.
“The Federal Social Security Law (see Federal Insurance Contributions Act, 27 [26] U.S.C.A., Section 1400 et seq.) requires social security deductions based on the maximum of $4800 in taxable wages while the Florida Unemployment Compensation Law requires payment of unemployment compensation contributions based on a maximum of $3000 in taxable wages regardless of whether a full-time employee earning the maximum amount of wages is employed by other employers on a part-time basis during the same calendar year. Similarly, social security deductions and unemployment compensation contributions are required with respect to taxable wages of such workers in their part-time employment regardless of whether the maximum taxable wages of $4800 for social security purposes or $3000 for unemployment compensation purposes has been taxed with regal'd to the full-time employment and regardless of whether any additional benefits to the workers result from such deductions or taxes.
“If any worker receives an amount of taxable wages in excess of $4800 in total employment, all his employers must match the social security deductions which they make from his wages and transmit it to the Federal Government. Yet, none of his employers are legally entitled to any refund of such matching funds. Similarly, if any worker receives an amount of taxable wages in excess of $3000 in total employment, none of his employers are entitled to a refund of any unemployment compensation contributions paid by them.
“However, notwithstanding the above provisions of the Unemployment Compensation Law, the evidence shows that many of the part-time Union workers received taxable wages of less than $3000 in employment with Southern Bell in any calendar year and received additional payments from the Unit for services performed for it. Payment of unemployment compensation contributions by the Unit on any of these payments would serve to increase the weekly unemployment compensation benefit amounts to be received by such workers if determined eligible for unemployment compensation contributions. In addition, employees whose taxable wages with Southern Bell are less than the amount needed to qualify them for eligibility for unemployment compensation contributions may qualify by merging their payments from the Unit with wages received from Southern Bell. A definite advantage is thus received by these workers. This parallels the advantage which the workers received who earned less than the $4800 maximum in total wages from Southern Bell and merged such wages with payments received from the Unit to enable them to raise their potential monthly Social Security annuity.
“Another reason advanced by the Unit in opposition to the liability determination is that Southern Bell must approve release of the workers for part-time work with the Union. The record shows, however, that once ap *755 proval is granted, the Unit’s Executive Board and membership determine the nature of services to be performed and supervise and control the performance of such services by the part-time Union workers. Furthermore, payment to these workers are subject only to approval by the Union’s president and any Union member can be removed from his duty by action of the Unit’s Board or membership.
“The Unit contends that since payment is based upon time lost rather than on the value of services performed, and that all payments are derived from Unit funds, that such circumstances evidence absence of an employment relationship. The basis of computing the remuneration for the services is immaterial. The controlling factor is that such remuneration is paid by the Unit, for services performed for the Unit, rather than for Southern Bell. Such payments are ‘wages’ within the meaning of Section 443.03(13) (a), F.S., since they constitute ‘remuneration paid for services.’ Furthermore, these payments do not fall within the enumerated exclusions from the term ‘wages’ in Section 443.-03(13) (b), F.S.
“Similarly, the source of the fund is immaterial since the evidence shows that the two admitted full-time employees are remunerated from the same source as the part-time Union workers, namely, from the Union dues refund checks, yet their status as employees is not questioned by the Unit on this basis.
“Other evidence of the existence of an employment relationship is found in the workmen’s compensation coverage provided by the unit for its members. While the testimony of the hearing showed that this coverage was voluntarily secured by the Unit for all members to protect the two full-time employees, nevertheless, premiums must be paid by the Unit on the payments made to all Unit members who performed services for it to provide coverage for all such members in the event of an industrial accident.
“The fact that the Union secured an Owners’, Landlords’, and Tenants’ Liability Policy also indicates assumption of responsibility to protect itself in case of the negligent acts of any of its officers or its members causing bodily injury or property damage on the Unit’s premises.
“In its Brief, filed herein, the Union relies heavily on the cases of Chicago Grain Trimmers Association vs. Murphy, Director of Labor, [389 Ill. 102] 58 N.E.2d 906, Ill.1945, and In Re Perry, [287 N.Y. 539] 41 N.E.2d 88, N.Y. 1942. These cases are readily distinguishable from our case and they are, therefore, not controlling.
* * * * * *
[Here followed a discussion of certain of the authorities cited.]
“The Unit while contending that it is not the employer of the part-time Union workers in question has held itself out as such to the Federal Government in regard to Social Security and withholding taxes and to the Industrial Commission in regard to workmen’s compensation coverage. Only with regard to liability for the unemployment compensation tax has it failed to treat its payments to these workers as wages. There can be no logical or legitimate reason for such distinction in view of these facts in the case viewed as a whole.
“In view of the foregoing, it should be concluded that the part-time Union workers are employees of the Unit and that such Unit is a liable employer within the meaning of Chapter 443, F.S. However, examination of previous determinations made by the Commission in somewhat similar ca.ses in *756 dicates a possibility that this ruling might constitute a change of official position in a matter of tax law interpretation. Such a change should he given only prospective effect, never retroactive. Resolving the doubt in favor the taxpayer, it is accordingly,
“Ordered that the determination of the Commission holding the part-time Union workers to be employees of the Unit and holding the Unit to be liable for the payment of unemployment compensation contributions be and the same is hereby affirmed, but that such liability shall commence January 1, 1965, upon fulfillment of normal liability requirements by the Unit in 1965.
“Done and Ordered at Tallahassee, Florida, this 16th day of December, 1964.”
The facts as found by the commission are not disputed. We agree with the commission’s interpretation of the facts and with its decision, and we see no need to add thereto.
Certiorari is denied and the petition is dismissed.
It is so ordered.