**Alfred G. McCONNELL and Alexander H. McConnell, individually and d/b/a Odessa Petroleum Development, Plaintiffs,**

v.

**Michael SURAK and Randy Lane, individually and d/b/a S & L Oil Company, Defendants.**

No. 83 C 4180.

United States District Court, N.D. Illinois, E.D.

Sept. 14, 1984.

---

James F. Gebhart, Chapman & Cutler, Chicago, Ill., for plaintiffs.

James J. Moylan, Chicago, Ill., for defendants.

### MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Alfred and Alexander McConnell (individually "Alfred" and "Alexander," collectively "McConnells"), individually and doing business as Odessa Petroleum Development, a partnership ("Odessa," used as a singular noun), sue Michael Surak ("Surak") and Randy Lane ("Lane"), individually and doing business as S & L Oil Company, a partnership ("S & L," used as a singular noun):

    1. for rescission under the Illinois Securities Law of 1953 (the "Act")[1] of

---

**1.** All citations to the Act, Ill.Rev.Stat. ch. 121½, ¶¶ 137.1–.19, will take the form "Act §—" (the section number will be the decimal part of

¶ 137.—). Because there was a major overhaul of the Act in 1983 (effective this year), the

Odessa's oil and gas lease investment in three Illinois oil wells under a Participation Agreement promoted by S & L (the "Project") (Count I);[2] and

2. for like rescission under the Securities Act of 1933 (Count II).

Each side has filed a Fed.R.Civ.P. ("Rule") 56 motion for summary judgment on Count I.[3] For the reasons stated in this memorandum opinion and order, McConnells' motion is granted and S & L's motion is denied.

### Facts[4]

Alfred is a mortgage broker who, before investing in the Project, had previously made only one oil and gas deal investment—that too with the S & L partnership. Alexander is a businessman who had previously made only two such investments (both through his uncle). In each instance the investment has been a fractional interest in an oil and gas deal acquired since 1981 and has been retained for investment since acquisition.

Because of his earlier investment with S & L, Alfred had the opportunity to acquire an interest in the Project. Alfred (lacking the funds to make the investment on his own) joined with Alexander in making the investment, forming Odessa as a partnership for that purpose. On or about August 27, 1982 Odessa paid $68,000 to purchase an undivided one-eighth interest in the Project, which comprised three oil and gas leases in Crawford County, Illinois.

S & L had written Alfred in Illinois soliciting his participation in the Project. Odessa signed the Participation Agreement in Illinois. Though S & L was obviously aware of the Act's requirements, it did not register the oil and gas interests as securi-

relevant provisions are of course the pre-1983-amendment version of the Act.

**2.** Both McConnells are Illinois citizens, while Surak and Lane are Indiana citizens. Jurisdiction as to Count I thus exists under 28 U.S.C. § 1332(a)(1).

**3.** S & L has also moved for summary judgment on Count II. Because of the high probability of McConnells' success on the Count I motion (as this opinion has now confirmed), on September

ties under Act § 5. Instead it attempted to file with the Illinois Secretary of State an Act § 4 H report of sale to Odessa nearly three months after the sale (on November 17, 1982), but the report was unacceptable for filing because untimely (Act § 4 H requires such filing within *30* days after the date of sale).

When the Project proved a total failure, Alfred inquired as to possible remedies against S & L, one of his inquiries being directed to the Illinois Secretary of State. In response the Secretary of State advised of S & L's unacceptable (because tardy) effort at Act § 4 H filing, and Odessa (through its counsel) promptly served a timely notice of rescission under Act § 13 B. S & L refused to return Odessa's investment and this action followed.

### Odessa's Right to Rescission

■ Unquestionably the sale of the oil and gas interest to Odessa had the requisite Illinois connections to become subject to the Act. *Illinois National Bank & Trust Co. of Rockford v. Gulf States Energy Corp.*, 102 Ill.App.3d 1113, 1126, 57 Ill.Dec. 938, 947, 429 N.E.2d 1301, 1310 (2d Dist.1981); *Green v. Weis, Voisin, Cannon, Inc.*, 479 F.2d 462, 464–65 (7th Cir. 1973). Equally without question that interest was a "security" under the Act, for Act § 2.1 includes within that term any "fractional undivided interest in oil, gas, or other mineral lease." Because the interest was not an exempt *security* under Act § 3, Act § 5 required that it be registered before sale unless the *transaction* (the sale to Odessa) was exempt under one of the subsections of Act § 4.

7 this Court stayed further briefing on the Count II motion.

**4.** No facts are controverted, nor is there really any occasion for the drawing of factual inferences. To the extent any did have to be drawn, they would run in favor of S & L as the party opposing the successful summary judgment motion. *Hermes v. Hein,* 742 F.2d 350, 353 (7th Cir.1984).

Act § 4 H could have served as the predicate for exempting the S & L-Odessa transaction, had a proper and timely post-sale report been filed. It was not. Hence S & L must find its safe harbor in Act § 4 D or not at all. That subsection exempts in relevant part:

> The sale of fractional undivided interests in any oil, gas or other mineral lease ... to any association [5] or trader buying or selling fractional undivided interests in oil, gas or other mineral rights, in frequent operations, for its or his own account rather than for the account of customers, to such extent that it or he may be said to be engaged in such activities as a trade or business....

No cases have construed that provision of Act § 4 D in the respect at issue here. What Illinois case law does however teach is that only statutory and not equitable defenses may be raised by a defendant opposing rescission, so that strict compliance with the exemption provisions is mandatory (*Gowdy v. Richter*, 20 Ill.App.3d 514, 525, 314 N.E.2d 549, 557 (1st Dist. 1974)). As *Jenkins v. Dearborn Securities Corp.*, 42 Ill.App.3d 20, 23, 355 N.E.2d 341, 344 (4th Dist.1976) put it:

> Unless the specific words of the exemption provisions of the Act require it, private investors are not denied its protection simply because they have some experience or sophistication.

Accord, *Ronnett v. American Breeding Herds, Inc.*, 124 Ill.App.3d 842, 851, 80 Ill.Dec. 218, 223, 464 N.E.2d 1201, 1206 (1st Dist.1984); *Martin v. Orvis Bros. & Co.*, 25 Ill.App.3d 238, 248, 323 N.E.2d 73, 81 (1st Dist.1974)).

But even were those rules of construction not applicable, the answer would be the same. There is no conceivable way Odessa can be said to have engaged in oil and gas transactions "in frequent operations ... to such extent that it ... may be said to be engaged in such activities as a trade or business." Unable to deal with that real issue, S & L seeks to create a false one. It argues Odessa comes within Act § 4 D because "oil and gas investments are Odessa's *only* operations" (Ans. Mem. 3, emphasis in original). That is nonsense. Just as one swallow does not a summer make, so one passive oil and gas investment (all that Odessa has ever made) cannot conceivably comprise "frequent operations to such extent that [Odessa] may be said to be engaged in such activities as a trade or business."

Indeed that common-sense conclusion is compelled by the statutory structure itself. Act § 4 C, the corresponding exemption provision as to all securities *except* interests in oil, gas or mineral leases, extends to any sale (emphasis added):

> to any association engaged as a *substantial part* of *its* business or operations in purchasing or holding securities....

Had Odessa purchased some *other* kind of security as its sole activity, Act § 4 C would have rendered the purchase exempt, for it focuses only on the comparative relationship between the association's securities transactions and its total activities of all kinds. But as to oil and gas transactions, the Illinois General Assembly has chosen a wholly different test: whether there has been a sufficient *frequency* of buying or selling such interests for those

---

**5.** One of the 1983 amendments to the Act changed "any association" to read "any partnership or other association." That change was explained in the "interpretive comments" by Roger Fein, Esq. and Sidney Sosin, Esq. (Ill. Ann.Stat. [Smith-Hurd] ch. 121½, 1984–85 pocket part at 37):

> It has been made clear that the term "association" as used in the exemption includes a partnership. Although the term "person" (as defined in § 2.3) already includes "partnership," questions have been raised as to wheth-

er a partnership is an "association" for the purpose of this exemption.

For purposes of this opinion any such questions have been resolved in S & L's favor by considering the Odessa partnership as an "association." See *Stein v. Twilight Motel, Inc. of Florida*, 29 Ill.App.2d 131, 136–37, 172 N.E.2d 642, 644 (1st Dist.1961). Even were that not so, Alfred and Alexander might individually be considered "traders," to avoid creating an obvious hole in the statute if partnerships were not within its coverage.

activities themselves to constitute a trade or business.

■ Thus *Martin*, 25 Ill.App.3d at 248, 323 N.E.2d at 81 emphasized the difference in language between Act §§ 4 C and 4 D (a difference it found intentional on the part of the legislature) in holding a frequent trader *not* exempt under Act § 4 C.[6] Here parity of reasoning requires the conclusion that the same difference in language negates any exemption under Act § 4 D for an association where a substantial part (or even all) of its own business is in purchasing or holding oil and gas securities in admittedly *infrequent* transactions (in this case only a one-time purchase and no sales, the very antithesis of "frequent operations").

In the same vein S & L itemizes the perfectly neutral (in Act § 4 D terms) things Odessa has done—its partnership agreement authorizing it (1) "to carry on the oil and gas business generally, including, but not limited to, the buying and selling of oil and gas leases, royalties, mineral interests, and other interests in oil and gas properties" and (2) permissibly to include, in addition to the initial investment in the Project (the only assured investment), "[o]ther oil investments ... as the partners may so unanimously agree";[7] what S & L misleadingly terms as "Odessa [having] elected to be taxed as an oil and gas company under the Internal Revenue Code" (Cross-Motion 5), thus "availing its partners of the tax advantages attendant thereto" (Ans. Mem. 3);[8] its maintenance of a partnership bank account (virtually inactive); and its having paid $100 for bookkeeping services and having paid an accountant $120 for preparation of the tax returns. From those things S & L contends (Mem. 4–5):

> Odessa was organized as an oil company, looks like an oil company, acts like an oil company, holds itself out in commerce as an oil company, elected federal income tax treatment as an oil company, and files federal and state income tax information returns as an oil company. In fact, it appears that Odessa is an oil company for all purposes except this litigation.

And that purportedly leads to a significant conclusion (Cross-Motion 6):

> The foregoing establishes that Odessa is an oil company within the meaning of section 4D of the Illinois Act.

Of course the short answer is S & L has set up a straw man: Act § 4 D does not speak of "oil company" at all. Its language is the "frequent operations" language already quoted, and no amount of twisting by S & L can change it.[9] Statutory amendment is the function of the Illinois

---

**6.** And see *Stein,* 29 Ill.App.2d at 137–38, 172 N.E.2d at 644–45, holding an "association" nonexempt under Act § 4 C because of the relative role securities transactions played in its total activities, not because of the frequency of its securities transactions as constituting a trade or business.

**7.** It is plain from the Partnership Agreement and from the facts of the case that such provisions merely represent conventionally careful drafting by counsel, providing for the future possibility McConnells might go into another transaction together in the future (in which event the need to draft a new partnership agreement would have been obviated). What controls however is that no level of frequency has *in fact* occurred at all.

**8.** That too, so far as this Court has been able to determine, is a fake characterization. All S & L refers to in support of its statements is the filing of *partnership* tax returns for Odessa, something they had to do once they (permissibly) opted for a joint investment because only Alexander had the necessary funds (it is doubtful McConnells could qualify for exclusion from Subchapter K, the partnership provisions of the Internal Revenue Code, under Reg. § 1.761–2; but even if they could, that would give them identical tax treatment). But in all events there is *no* showing of an "oil company" set of "tax advantages" for private investors, who under the Code are entitled to depletion and the other aspects of tax treatment whether they go into deals individually or (as here) jointly. That seems to be as much a figment of S & L's lawyer's imagination as the nonexistent "oil company exemption" under the Act, discussed next in the text.

**9.** To like effect S & L speaks of "the 'oil company' exemption contained in section 4D of the Illinois Act" (Cross-Motion 2; Ans. Mem. 10) as though that language were really in the Act. It too is not, and wishing does not make it so.

General Assembly, not of S & L (or this Court).[10]

S & L is right in one respect. It would seem anomalous for (say) two frequent traders in oil and gas to form a one-shot partnership and claim the sale to that partnership was *not* exempt from the Act because their "association" was not "buying or selling ... in frequent operations." That however does not justify reading the frequency requirement out of the statute. Such judicial legislation would be at war with the legislature's clear language and with the principles of all the Illinois cases cited in this opinion.

At most the problem just identified could cause a sale to a partnership to be viewed in statutory terms as a sale to each of the partners. Then the transaction could be considered in terms of whether either partner was a "trader buying or selling ... in frequent operations." From that perspective too, each McConnell is *not* within the exemption: Alfred has made a total of two passive investments (including the present one) and no sales, while Alexander has made a total of three passive investments and no sales. Neither of them individually comes within Act § 4 D's terms any more than Odessa does.

Unsuccessful in its efforts to ignore the statutory language, S & L essays to put another false face on the matter. It argues (Cross-Motion 4):

> The Illinois Securities Commissioner accepted the claimed 4D exemption for Odessa and "... closed all files related to this matter." [11]

It calls that action an "administrative determination" and argues (Mem. 5):

It has long been held that the administrative determinations of the agency responsible for administering a statute are entitled to great deference by the courts.

It is hard to see how that assertion could be advanced with any seriousness. What really happened is that about 45 days after S & L's untimely Act § 4 H report was rejected by the Secretary of State, S & L wrote the Illinois Securities Commissioner:

> It has been an over-site [sic] on our part to mail our Report of Sale (Form 4H) in the prescribed time. This occurred as a result of poor communication with our attorney. S & L was of the understanding that the Corporate attorney would mail this form. When it was discovered that he had not, we immediately sent the form. Since mailing, we have discovered that Odessa Petroleum Development is not covered under this Act, as outlined in 4D of the S.E.C., however, Mr. A.A. Manson is covered. S & L has sent him the Recession [sic] forms and are awaiting his response.

In response the Secretary of State's office wrote back—without any factual investigation, and simply taking S & L's word for the fact the sale to Odessa was exempt:

> Insofar as a party selling unregistered securities need only satisfy the elements of one of the exemptions from registration available under the provisions of Section 4 of The Illinois Securities Law of 1953 ("the Act") or demonstrate why the Act is not applicable. This Department no longer finds it necessary to pursue this matter as a violation of the Act. Therefore, this Department has closed all files related to this matter.

---

**10.** In fact one of the most significant statutory revisions in 1983 (to take effect this year) eliminates the need to file a post-sale report as a condition to the availability of the private offering exemption (Act § 4 G as now amended). Thus under the Act as *now* in effect, S & L's sale to Odessa would have been exempt under Act § 4 G (which now includes sales of oil and gas interests) despite the untimely post-sale report. As the "interpretive comments" make plain (Ill. Ann.Stat. [Smith-Hurd] ch. 121½, 1984–85 pocket part at 39–40), that change actually confirms S & L's vulnerability to rescission under the Act as it read at the times relevant to this action.

**11.** S & L advanced the same misleading contention at Mem. 5 and Ans. Mem. 9 (the latter stating, for example, that "the Office of the Illinois Securities Commissioner has permitted S & L to claim the 4D exemption for its sale to Odessa").

But the Securities Commissioner specifically did *not* give S & L a clean bill of health. Quite to the contrary, the Secretary of State's letter continued:

Please be advised, however, the Illinois Securities Department expressly does not pass on the availability of the exemption referenced in your letter. Therefore, you are requested to maintain adequate records to support your positions with respect to the reported transactions.

Obviously that was not an "administrative determination" at all, let alone one "entitled to great deference." It is candidly an affront to opposing counsel and this Court to advance such an empty argument.[12]

In sum the sale by S & L—whether viewed for statutory purposes as made to Odessa directly or to the two McConnells individually—was a non-exempt transaction. Given Odessa's timely rescission, S & L (and that means Surak and Lane jointly and severally under the specific provisions of Act § 13 A) is liable for the refund of the full unrecovered purchase price and the other remedies under Act § 13 A.

## Conclusion

There is no dispute as to any material fact, and McConnells, individually and doing business as Odessa, are entitled to a judgment as a matter of law on Count I (presumably mooting Count II). Upon their tender of the undivided one-eighth interest in the Project (which they have offered to make) they are entitled to full relief under Act § 13 A. They are requested promptly to submit a draft order for that purpose.

12. Since this opinion was initially issued, counsel for S & L has explained the work (in terms of both factual and legal research) done in connection with defending this action and the current motion. Though the arguments advanced remain wholly unpersuasive in light of the overpowering factors identified in this opinion, this

Court is satisfied that counsel proceeded in subjective good faith. In any event the Act protects McConnells against defendants' assertion of their wholly nonmeritorious defenses by allowing McConnells to recover their reasonable attorneys' fees.