CHARLES W. HARRISON, Plaintiff-Appellant, v. LELAND FULKERSON, Defendant-Appellee.

Fifth District   No. 5—87—0614

Opinion filed November 16, 1989.

Brent D. Holmes, of Harlan Heller, Ltd., of Mattoon, for appellant.

Patrick M. Burke, of Brazitis, Burke & Tomlin, of Olney, for appellee.

JUSTICE HOWERTON delivered the opinion of the court:

The circuit court of Richland County found plaintiff, a physician, to be a trader, buying and selling oil leases in frequent operations to such an extent that he could be said to be engaged in the buying and selling of oil leases as a trade or business.

We reverse, because the finding is against the manifest weight of the evidence. We believe that imprecise language in this field has led the circuit court to misconstrue the operation of the Illinois Securities Law of 1953 (the Act) (Ill. Rev. Stat. 1981, ch. 121½, par. 137.1 *et seq.*).

■ The Act is designed to protect the investing public from dubious, "fly-by-night" investment schemes. See Ill. Ann. Stat. ch. 121½, par. 137.1 *et seq.*, Appendix by Samuel H. Young (Smith-Hurd (1960)); see also *Stein v. Twilight Motel, Inc.* (1961), 29 Ill. App. 2d 131, 172 N.E.2d 642; *Martin v. Orvis Brothers & Co.* (1974), 25 Ill. App. 3d 238, 323 N.E.2d 73.

The Act is paternalistic and is to be liberally construed to allow accomplishment of its purpose. *Meihsner v. Runyon* (1960), 23 Ill. App. 2d 446, 163 N.E.2d 236.

■ The Act allows a buyer to rescind a purchase if the sale violates the Act. (Ill. Rev. Stat. 1981, ch. 121½, par. 137.13.) In this case, plaintiff bought an interest in oil leases. Oil leases are covered by the Act. Ill. Rev. Stat. 1981, ch. 121½, par. 137.2—1.

The Act, however, exempts a sale of an interest in an oil lease where the sale is to a trader buying or selling interests in oil leases "in frequent operations," for "his own account," and "to such extent that *** he may be said to be engaged in such activities as a trade or business." Ill. Rev. Stat. 1981, ch. 121½, par. 137.4(D).

The oil leases in this case never were registered with the Secretary of the State of Illinois, Securities Division, as required by the Act. Ill. Rev. Stat. 1981, ch. 121½, par. 137.5.

If this sale is exempt from the Act, plaintiff cannot rescind. On

the other hand, if this sale is not exempt from the Act, plaintiff is afforded the Act's protection and, therefore, can rescind.

The pivotal issue, therefore, is whether the evidence showed plaintiff to be a trader in oil leases in frequent operations for his own account to such an extent that he may be said to be engaged in trading in oil leases as a trade or business, because if plaintiff is such a trader, this sale is exempt from the protections afforded by the Act.

We must note that decisions of Illinois courts that have interpreted the Act and its exemptions have spoken of "sophisticated investor" exemptions. (*McConnell v. Surak* (7th Cir. 1985), 774 F.2d 746; *Stein v. Twilight Motel, Inc.* (1961), 29 Ill. App. 2d 131, 172 N.E.2d 642.) Indeed, the circuit court said, "[T]his is not *** one who perceived himself as an unsophisticated investor. *** It is not a requirement that the plaintiff be engaged in oil production as his only business. It is only a requirement that he be in the business to such an extent that he is a sophisticated investor." Use of the word "sophisticated" is a paraphrase of the statute; a paraphrase can lead to the wrong result. The test is not "sophistication"; rather, the test is the express language contained in the exemption. Investors are not deprived the protection of the Act merely because they are "sophisticated." (*Martin v. Orvis Brothers & Co.* (1974), 25 Ill. App. 3d 238, 323 N.E.2d 73.) Investors fall outside the protection of the Act only if the Act specifically excludes them. (*Martin v. Orvis Brothers & Co.* (1974), 25 Ill. App. 3d 238, 323 N.E.2d 73.) The Act calls us to assess whether the evidence proved plaintiff to be a trader, buying and selling, in frequent operations, interests in oil leases for his own account to such an extent that he may be said to be engaged in the buying and selling interests in oil leases as a trade or business. The Act does not call us to assess whether plaintiff was "sophisticated."

We have found no Illinois case directly on point. The facts of this case are most like those in *Martin v. Orvis Brothers & Co.*, but *Martin* dealt with whether plaintiff was a "dealer" under section 4(C) of the Act; whereas, here the issue is whether plaintiff is a "trader" under section 4(D). (Ill. Rev. Stat. 1981, ch. 121½, pars. 137.4(C), (D).) *Martin*, therefore, does not control this case but is analogous. A comparison of facts follows.

In *Martin*, the plaintiff also was a physician specializing in internal medicine; he made early investments in oil and real estate, but had divested his real estate holdings; he then began to invest in the stock market and dealt with 17 different brokerage houses; he bought stock over a four-year period costing $6,979,899.96 and sold

stock for at least $5,607,526.72; he borrowed money from various banks to finance his stock dealings; his loans from seven banks totalled at least $2,386,800; and the greater portion of his time was devoted to his stock market activity; during 1968 until April 1969, Dr. Martin bought stock in a company whose stock was not registered with the Secretary of the State of Illinois as required by the Act; he bought 25,190 shares of that stock; when Dr. Martin sued to rescind his purchase of the stock, defendant claimed that the sales were exempt from the Act, because Dr. Martin was a "dealer." The court held that Dr. Martin was not a "dealer" as a matter of law.

In our case, plaintiff is a physician, specializing in internal medicine; he has had patients who were involved in the oil business; he is familiar with some of the technology and processes involved in the extraction and production of oil; he has had no formal training in geology or drilling; in the 1950s, he bought a one–thirty-second interest in two or three wells in Jasper County; he bought similar interests in two more wells in the late 1950s or the early 1960s; in 1973, he bought into another lease; one other was bought later, this time a seven-sixteenths working interest; he incorporated as "Harrison Oil Corporation" at the insistence of his accountant; he transferred some of his individual mineral rights to the corporation of which he and his wife were sole shareholders; in 1981, he bought a one-sixth undivided working interest in the lease out of which this case arises; he bought into another lease afterwards; plaintiff earned from his oil investments a total of $166,487.45 for the years 1981, 1982, and 1983; in summary, he had 9 or 10 significant interests in oil leases over a span of 30 years.

*Martin's* primary basis was that Dr. Martin dealt only for his own account, not for others, and therefore, did not have characteristics normally attributable to a dealer.

In our case, plaintiff likewise dealt only for his own account, but the primary basis for our decision is our belief that 9 or 10 transactions this size over 30 years is insufficient to find that plaintiff was engaged in buying and selling interests in oil leases as a trade or business. See *McConnell v. Surak* (1985), 774 F. 2d 746, 751 (wherein *dicta* indicated that five transactions in one year would be insufficient to put buyers outside the protection of the Act).

Whether one may be said to be engaged in trading oil leases as a business or a trade is not susceptible to a "bright line" rule. Resolution of this question necessarily always is *ad hoc. Martin v. Orvis Brothers & Co.* (1974), 25 Ill. App. 3d 238, 323 N.E.2d 73.

On these facts, however, we hold that the finding of the circuit court of Richland County that plaintiff was so engaged is against the

manifest weight of the evidence. The circuit court is reversed and the case remanded for entry of judgment for plaintiff allowing him to rescind and for such other proceedings as are consistent with this opinion.

Reversed and remanded.

GOLDENHERSH and CHAPMAN, JJ., concur.