**Gordon S. MARK, Plaintiff-Appellee,**

v.

**McDONNELL & CO., Inc., Defendant-Appellant.**

**No. 18884.**

United States Court of Appeals,
Seventh Circuit.

Aug. 25, 1971.

H. Templeton Brown, Lee N. Abrams, William A. Gordon, Chicago, Ill., for defendant-appellant; Mayer, Brown & Platt, Chicago, Ill., of counsel.

Ware Adams, Chicago, Ill., for appellee.

Before DUFFY, Senior Circuit Judge, and KILEY and STEVENS, Circuit Judges.

STEVENS, Circuit Judge.

On December 24, 1969, plaintiff filed a complaint alleging that on January 30 of that year he had purchased from defendant 500 shares of its nonvoting stock. He alleged that the consideration for the purchase was (a) his agreement to lend either $250,000 or 4300 shares of American Home Products Company stock to defendant, and (b) his payment to defendant of the book value of the stock. He actually loaned 4301 American Home shares and paid $38,005 at the rate of $76.01 per share to defendant. His complaint prayed for rescission of the entire transaction.

The complaint was in nine counts and alleged a number of violations of the Securities Exchange Act of 1934, the Securities Act of 1933, the Illinois Securities Law of 1953, and common law fraud. The defendants were the New York Stock Exchange and plaintiff's former employer, McDonnell & Co., Inc., from whom he had purchased the stock. McDonnell was a member of the Exchange and was registered as a dealer in securities with the Securities and Exchange Commission and with the Illinois Secretary of State.

On the day the complaint was filed, plaintiff also filed a motion for a preliminary injunction to restrain McDonnell from making any transfer of the 4301 shares of American Home stock. The motion was set for hearing on January 29, 1970, when various affidavits were filed and testimony was presented. At the outset of that hearing plaintiff filed a motion for summary judgment on Count II of the complaint. This appeal is from the order, entered

some months later, granting summary judgment on that count.

At the injunction hearing plaintiff testified at length. The executive of McDonnell with whom he had negotiated the transaction was present in court but did not testify. At the conclusion of the hearing the district court found that the loan of American Home shares was part of the consideration for McDonnell's sale to plaintiff of 500 of its own shares; concluded that bona fide questions as to violations of the federal and state securities laws had been raised; and entered the injunction.

Thereafter McDonnell answered the complaint, filed various affidavits and interrogatory answers, and took plaintiff's deposition. On that record, after receiving the parties' briefs, the district court entered judgment for the plaintiff on Count II. If that judgment is affirmed, no further proceedings on the other counts will be necessary; if it is reversed, plaintiff still has eight arrows in his quiver.

Count II is predicated on the Illinois Securities Law. Ill.Rev.Stat. Ch. 121½, § 137 et seq. Section 13 provides that every sale of a security made in violation of the Act is "voidable at the election of the purchaser" who may recover from the seller "the full amount paid."

Section 5 of the Act requires that, except for certain exempt securities and exempt transactions, all securities "shall be registered prior to sale in this state." McDonnell admitted that the 500 shares sold to plaintiff were not registered. In the district court it contended that the sale was exempt because (a) plaintiff was a "sophisticated investor," and (b) it had made sales to less than 15 persons within a 12-month period and had given sufficient information to the Secretary of State to constitute "substantial compliance" with the reporting requirement of § 4, subd. G. It also contended that the loan of American Home shares was not part of "the full amount paid" for its stock within the meaning of § 13.

On this appeal the contentions rejected below are again urged. In addition, McDonnell contends that the district court erroneously admitted parol evidence and resolved genuine issues of material fact. Finally, it asks leave to supplement the record to show that it is "hopelessly insolvent" and should be allowed to vindicate the rights of its general creditors. Its principal creditor, the New York Stock Exchange, to which McDonnell has an indebtedness of over eight million dollars, was a party below; neither it nor McDonnell made the insolvency contention which is urged here.

■ On the basis of the record before it, the district court's order was plainly correct. We reject McDonnell's attempt to raise new issues after perfection of its appeal.

### I.

■ The record demonstrates that plaintiff is a well educated intelligent individual, with experience in analyzing securities. McDonnell suggests that since the statute was enacted to protect unwary and unsophisticated investors, its coverage should not encompass plaintiff. The scope of the statute's coverage is for the Illinois General Assembly, not for us, to determine. *Cf.*, Stein v. Twilight Motel Inc., 29 Ill.App.2d 131, 172 N.E.2d 642 (1st Dist. 1961). McDonnell has not directed our attention to any statutory exemption for "sophisticated investors" such as plaintiff.[1]

---

1. What is commonly referred to as the "sophisticated investor" exemption reads as follows:

"§ 137.4 Exempt transactions

"The provisions of Sections 5, 6 and 7 of this Act shall not apply to any of the following transactions, except where otherwise specified in this Section 4:

\*    \*    \*    \*    \*

"C. The sale of securities, other than fractional undivided interests in oil, gas or other mineral lease, right or royalty, to any corporation, bank, savings institution, trust company, insurance company, building and loan association, dealer, pension fund or pension trust, employees' profit sharing trust or to any association engaged in a substantial part

850

With similar force, McDonnell argues that plaintiff was not injured by its failure to file the notice required by § 4, subd. G to qualify the sale for exemption from registration. But the statutory right to rescind, as defined by the Illinois Legislature, is not dependent on the purchaser's ability to prove an actual injury or actual fraud. Moreover, in this case there can be no doubt that plaintiff was in fact injured as a result of McDonnell's failure to comply with the statute. In focusing on the absence of the notice as the source of plaintiff's injury, McDonnell ignores the statutory scheme. If it had *registered* the securities, presumably it would have made disclosures which would have warned a potential investor of the risks involved in buying its stock. The facts of record make it extremely doubtful that plaintiff would have made his purchase if the securities had been registered. McDonnell cannot escape responsibility for the consequences of its failure to register without meeting the statutory requirements for exemption.

## II.

McDonnell contends that it did qualify for the exemption because substantially all of the information required by § 4, subd. G had been given to the Secretary of State in one form or another. There are two flaws in the argument: (1) all of the information had not been provided; and (2) nothing was provided in the form reasonably required by the Act.

The relevant portion of § 4, subd. G described the reporting condition as follows:

"[T]he issuer * * * shall file with the Secretary of State a report of sale within 30 days after the sale, setting forth the name and address of the issuer * * *, the total amount of the securities sold under this subsection G, the price at which the securities were sold, the commission paid, and the names and addresses of the purchasers * * *." [2]

McDonnell had its Articles of Incorporation on file with the Secretary of State. According to McDonnell these Articles required any sale of its stock to be made at a price determined "on the basis of net book value." The Articles further required that value to be calculated in accordance with sound accounting principles, subject to adjustment to reflect the market value of various kinds of assets owned by the corporation.[3] McDonnell argues that this requirement in its charter was substantially equivalent to a § 4, subd. G report stating the price at which 500 shares of its stock were sold to plaintiff on January 30, 1969. The argument is completely without merit. Even if the Secretary of State had McDonnell's accounting records at hand, and could compute a net book value as of that date, he would have no assurance that the sale to plaintiff had in fact been made at the price so computed. An essential element of the § 4, subd. G report—the price at which the securities were sold—was simply not provided to the Secretary of State.[4]

of its business or operations in purchasing or holding securities, or to any trust in respect of which a bank or trust company is trustee or co-trustee;"

2. Section 4, subd. G was amended in 1969. The amendments were effective January 1, 1970, and so are not applicable to this case. In any event, they would not affect the result reached by the district court.

3. *E. g.*, memberships in the New York Stock Exchange, listed securities, and commodities.

4. Appellant's argument has no validity whatsoever unless we assume that the Articles require that McDonnell stock be sold at net book value. McDonnell has not referred us to a specific provision of the Articles imposing this requirement. On the other hand, appellee has identified provisions in Article XII empowering the board of directors to grant stock options and sell corporate stock to officers and employees; these provisions require only that net book value be utilized to compute a minimum price for the stock.

The information which was provided was contained, for the most part, in various reports and correspondence submitted in connection with McDonnell's maintenance of its status as a registered dealer. We do not believe the Illinois General Assembly intended to impose upon the Secretary of State the duty of compiling scattered fragments of information contained in a variety of files when it directed in § 4, subd. G that a seller claiming exemption shall file "a report of sale." The burden of demonstrating compliance with the qualification for a statutory exemption is upon the party claiming its benefit.[5]

The district court correctly concluded that McDonnell had not filed a report of sale in compliance with § 4, subd. G. The sale to plaintiff was not an exempt transaction; since the shares were not registered, he was entitled to avoid the sale and recover the full amount paid. See Young, "History, Source and Effect of the Illinois Securities Law of 1953 as Amended," appendix to Ch. 121½, § 137 et seq., appearing in Smith-Hurd Illinois Annotated Statutes at p. 563.

### III.

If payment for securities sold in violation of the statute is made partly in the form of cash and partly in the form of a loan, the statutory recovery of "the full amount paid" would quite clearly encompass a return of both the cash and the loan. McDonnell does not disagree with this interpretation of the statute. It does argue, however, that the purchase of 500 shares of its stock and plaintiff's loan of 4301 American Home Products shares were separate transactions—in other words, that the loan was not part of the consideration for the sale.

The undisputed facts make it perfectly clear that the loan was a condition of the stock purchase. The negotiations, McDonnell's written offer,[6] and the single closing for both parts of the transaction admit of no other conclusion.

McDonnell argues, however, that this conclusion rests, in part, on inadmissible parol evidence because the form subordinated loan agreement which plaintiff signed was a completely integrated contract which recited that it "embodies the entire understanding of the parties." We disagree. The loan agreement was not completely integrated because it did not even mention the 4301 American Home Products shares. More significantly, no question of interpreting that document is raised. On the contrary, our focus is on the question whether the loan was a part of "the full amount paid" for McDonnell's stock. The written offer which plaintiff accepted shows that it was. To the extent that there is any doubt about this interpretation of the transaction, it was appropriate for the district court to consider extrinsic evidence. Ortman v. Stanray Corp., 437 F.2d 231, 235 (7th Cir. 1971).

McDonnell's vice president executed an affidavit which carefully recited that it had not represented to plain-

---

5. Section 15 provides:
   "Sec. 15 'Evidentiary Matters' A. In any action, civil or criminal, where a defense is based upon any exemption provided for in this Act, the burden of proving such exemption shall be upon the party raising such defense."

6. "Dear Gordon:
   "T. Murray McDonnell had advised me that you are agreeable to subordinating 4,300 shares of American Home Products common stock and to purchase 500 shares of McDonnell & Co. Incorporated Non-Voting Common Stock.

   "We enclose the necessary forms which you must fill out and which we would appreciate your returning to us by next Monday, February 3rd, as we are in the process of clearing other individuals with the Exchange.
       \*     \*     \*     \*     \*
   "We would, therefore, appreciate receiving with the enclosed forms your check in the amount of $39,500.00 and delivery of 4,300 shares of American Home Products common stock as promptly as possible.
           Thomas A. McKay
           Senior Vice President"

tiff that the loan "would constitute any part of the book value purchase price that he would have to pay for McDonnell stock" and that plaintiff did not request "that the book value price of McDonnell stock should be reduced for his benefit because of the loan." This affidavit is the principal basis for an argument that there was a genuine issue of fact as to whether the loan and purchase were related parts of a single transaction. As we read the affidavit, it does not contradict plaintiff's assertion that the total consideration was the "book value price" *plus* the loan.[7] This was a proper case for summary judgment, *cf.*, Ashwell & Co. v. Transamerica Insurance Co., 407 F.2d 762 (7th Cir. 1969), particularly since the trial judge had the benefit of uncontradicted oral testimony at the preliminary injunction hearing.[8]

### IV.

The argument to which McDonnell devotes the most space in its brief is predicated on its reiterated assertion that it is "hopelessly insolvent," and plaintiff, as a stockholder and subordinated lender, should not be given a preference over its "general creditors."

In his complaint plaintiff alleged that in November, 1969, McDonnell had notified him that the shares of its common stock which he owned were "worthless." In its answer McDonnell admitted that it had notified its shareholders in November "that the company's common stock had a zero book value at that time," but it denied "that McDonnell & Co. stated that such stock was worthless," and further specifically denied "that such stock was worthless." The answer did not aver insolvency and did not purport to raise any defense based on the rights of general creditors.

After the district court had rendered its opinion, a brief hearing was held to consider the form of an appropriate judgment. No question as to McDonnell's ability to satisfy the judgment was raised by anyone except plaintiff's counsel. He requested that a copy of "the liquidation agreement entered into by the company and the New York Stock Exchange" be filed with the court. The trial judge questioned whether he would have any right to order that document to be filed "unless you show that your judgment is uncollectible. * * * " Both McDonnell and the New York Stock Exchange were represented by counsel at that hearing and neither of them suggested that the liquidation arrangements had any relevance to either the merits or the collectibility of the judgment. Satisfactory security for payment, if not actual payment, of the judgment has been made.

After the appeal to this court was perfected, McDonnell filed a Motion For Leave To Supplement The Record. The additional matter which it desires to add includes an order and a complaint filed in a chancery proceeding commenced in March of this year in Newcastle County, Delaware. These papers make reference to a special trust created pursuant to the constitution of the New York Stock Exchange for the purpose of providing direct and indirect assistance to customers of a member firm of the Exchange threatened with loss because such firm is insolvent or unable to meet its obligations. We do not know whether plaintiff would be considered a "customer" of McDonnell within the meaning of that special trust because the tendered documents do not include either that trust instrument or the liquidation agreement

---

7. Despite appellant's argument to the contrary, plaintiff's deposition testimony is entirely consistent with his position.

8. As already noted, the motion for summary judgment was filed at the outset of that hearing. The relationship between the loan and the purchase was a critical issue at the hearing.

Appellant deposed plaintiff and prepared its affidavits in opposition to the motion for summary judgment subsequent to the court's decision on the motion for preliminary injunction and the entry of findings of fact and conclusions of law. Appellant had ample opportunity to raise a genuine issue of fact with regard to the relationship between the loan and the purchase.

which plaintiff requested in the court below.

The papers also include a statement of McDonnell's assets and liabilities as of March 12, 1971. At that time McDonnell was insolvent, its principal indebtedness being indicated as an obligation to the New York Stock Exchange of $8,424,482. We suspect, though we cannot be sure, that McDonnell's concern about granting plaintiff a preference over its "general creditors" is really an argument advanced on behalf of the New York Stock Exchange. If either McDonnell or the Exchange had a valid defense based on the financial condition of either of the defendants, they should have taken timely action to complete the record in the district court.

The judgment from which the appeal is taken was entered on September 24, 1970. Matters transpiring thereafter are not relevant to the validity of that judgment. The arguments in McDonnell's brief which are not supported by the record before the district court are rejected. The Motion For Leave To Supplement The Record is denied. The Judgment is affirmed.