LEWIS F. JAMES, Plaintiff-Appellee, *v.* ERLINDER MANUFACTURING COMPANY *et al.*, Defendants-Appellants.

First District (2nd Division)  No. 79-177

Opinion filed December 31, 1979.

Dannen, Crane, Heyman & Haas, of Chicago (Eugene Crane and Mitchell A. Cohen, of counsel), for appellants.

Goldsmith, Thelin, Schiller & Dickson, of Aurora (Bruce A. Brown, of counsel), for appellee.

Mr. JUSTICE DOWNING delivered the opinion of the court:

Plaintiff, Lewis F. James (James), brought this action pursuant to the Illinois Securities Law of 1953 (Ill. Rev. Stat. 1973, ch. 121½, par. 137.1 *et seq.*) (the Act), to rescind his purchase of stock sold in violation of the Act's requirements governing exempt transactions in unregistered securities. James sought to recover the purchase price, plus interest and attorney's fees, from defendants Erlinder Manufacturing Company (EMC), Jane L. Nesius (Nesius), and Carl P. Erlinder (Erlinder). The trial court granted James' motion for summary judgment.

Defendants appeal that judgment and ask this court to consider (1) whether the instant action is barred by the limitation provision of the Act, and (2) whether the trial court erred in granting summary judgment for James.

Prior to 1973, James was a supplier to EMC, a closely held Illinois close corporation. During July 1973, James negotiated with Nesius[1] and Erlinder[2] to purchase EMC stock. At that time the Erlinder family, through Nesius and Erlinder, held a majority interest in the 2,000 shares of EMC outstanding stock. Three other shareholders held minority interests.

On July 12, 1973, James agreed to buy 400 shares of EMC stock in exchange for $12,500. James paid the purchase price on July 20, 1973. On August 15, 1973, he acquired the shares. Later that day James attended a shareholders meeting. At that meeting the five then current shareholders, including James, voted to accept the tendered resignation of a director and, then, voted to elect James to EMC's board of directors. A special meeting of the directors was held immediately after the shareholders meeting. At this meeting James was elected to the offices of vice-president and assistant secretary. The minutes from that meeting indicate James voted for the adoption of two amendments to the corporation's bylaws and participated in other corporate business.

Thereafter, James participated in the management of EMC. Almost three years later, however, the company apparently began to suffer financially. In the first half of 1976, James resigned his offices and consulted an attorney. In June of that year, James' attorney advised him that the EMC securities sale could be rescinded because the stock was not registered with, and the sale was never reported to, the Secretary of State.

James notified defendants of his desire to rescind the sale and on July 30, 1976, he filed this action to recover the purchase price. Defendants answered that James was equally at fault for any statutory violation under the Act because during and after the period in which the violation occurred, James participated actively in the management of EMC.

After all parties filed motions for summary judgment, affidavits, exhibits, and memoranda, the trial court granted summary judgment for James and against all defendants.

I.

■■ We first note the sale of securities to James was made in violation of the Act. The 400 shares are within the scope of "securities" regulated by

---

[1] From 1973 to at least April 1975, Nesius was known as Jane L. Erlinder. Throughout that period she owned or controlled, as a trustee, 1,180 shares (59 percent) of EMC stock outstanding.

[2] During the years 1973 through 1975, Erlinder was chairman of EMC's board of directors and president of the company. He held 20 shares.

the Act. (See Ill. Rev. Stat. 1973, ch. 121½, par. 137.2—1.) Section 5 of the Act requires registration of securities unless they are exempt therefrom. Subsection (G) of section 4 provides the only relevant exemption to the registration requirement. The subsection provides that sales of securities within any 12-month period to 25 or fewer persons are exempt from registration under the Act if, *inter alia*, the issuer files with the Secretary of State:

> "[A] report of sale not later than 30 days after the sale, setting forth the name and address of the issuer * * *, the total amount of securities sold under [subsection (G)], the price at which the securities were sold, * * * and a representation that offers to sell such securities were not made to persons in excess of the number permitted * * * (Such report of sale shall be deemed confidential and shall not be disclosed to the public except * * * in court proceedings.)" (Ill. Rev. Stat. 1973, ch. 121½, par. 137.4(G)(4).)

No report of the sale to James was filed. Section 12(D) of the Act provides: "It shall be a violation of the provisions of this Act for any person: * * * [t]o fail to file with the Secretary of State any * * * report * * * required to be filed * * *" under the Act. (Ill. Rev. Stat. 1973, ch. 121½, par. 137.12(D).) Thus, the sale was in violation of the Act.

## II.

▪️ Defendants claim that the remedy of rescission is inappropriate. They first argue the three-year limitation provision of the Securities Law bars James' claim. Defendants contend the provision is applicable because James stated in one of his pleadings that the sale "occurred on July 12, 1973, when the contract was signed * * *." The complaint to rescind the sale of securities was filed July 16, 1976. Three years and four days had elapsed since the purported sale of July 12, 1973. Section 13(D) of the Securities Law provides "[n]o action shall be brought for relief under this Section [civil remedies] * * * after 3 years from the date of sale." (Ill. Rev. Stat. 1973, ch. 121½, par. 137.13(D).) Therefore, argue defendants, James' claim is barred. We do not agree.

Section 2—5 of the Act states as follows:

> " 'Sale' or 'sell' shall have the full meaning of that term as applied by or accepted in courts of law or equity, and shall include *every* disposition * * * of a security for value. 'Sale' or 'sell' shall *also* include a contract to sell * * *." (Emphasis added.) (Ill. Rev. Stat. 1973, ch. 121½, par. 137.2—5.)

It is clear from the pleadings and affidavits that the sale which James seeks to rescind is that transaction containing the elements of (1) the July 12, 1973, contract to sell securities, (2) the July 20, 1973, payment of $12,500, and (3) the August 15, 1973, acquisition of the 400 shares. The Act

provides that each event is an actionable sale from which the limitation period begins to run. "The buyer has three years to exercise his right of rescission, not only from the date the right first accrues but from the date the sale is completed * * *." *Silverman v. Chicago Ramada Inn, Inc.* (1965), 63 Ill. App. 2d 96, 101-02, 211 N.E.2d 596, *appeal denied* (1966), 33 Ill. 2d 626; accord, *Parrent v. Midwest Rug Mills, Inc.* (7th Cir. 1972), 455 F.2d 123, 128.

■■ The complaint was filed within three years of the completed sale of August 15, 1973. Thus, the action is not barred by the limitation provision.

### III.

Defendants next contend James cannot rescind the sale of securities because he was an active participant in the management of EMC during and after the period in which the sale should have been reported. In support of their position defendants cite *Stevens v. Crystal Lake Transportation Sales, Inc.* (1975), 30 Ill. App. 3d 745, 332 N.E.2d 727.

The plaintiff in *Stevens* sought to rescind his unreported purchase of unregistered securities even though he was an active officer and director of the closely held issuer during and after the time of the sale. The trial court granted defendants' motion for summary judgment. On review, this court affirmed the judgment and noted that "plaintiff did not seek to rescind his investment * * * until nearly 2½ years after his purchase of stock" and he "[did] not allege the defendants were guilty of any fraud or misrepresentation or any act or omission that was relied upon by plaintiff." *Stevens*, at 747-48.

James does not dispute his active participation in the management of EMC. James contends, however, the *Stevens* case is inapposite because he did not become an officer or director until after the securities sale. This court does not deem that difference to be significant. As in *Stevens*, we focus upon the totality of circumstances surrounding the transaction. Two facts stand out. James was an officer and director during the time the report should have been filed. And, this corporation was closely held.

■■ James was knowledgeable of EMC's operations. He had regular business dealings as a supplier to EMC prior to the sale. On the day James bought into the company, he became an officer and director. As an officer and director, it became incumbent upon him to see that the report of sale was filed within the statutory 30-day period. "[A] corporate officer or director who purchases stock in his corporation that is issued in violation of the Securities Law may not rescind that purchase some 2½ years later merely because the investment proves unprofitable." *Stevens*, at 748; accord, *Moore v. Manufacturers Sales Co.* (1953), 335 Mich. 606, 610, 56

N.W.2d 397, 399; *Tucker v. McDell's, Inc.* (1961), 50 Tenn. App. 62, 359 S.W.2d 597.

Moreover, the purpose of the Act would be abused if we were to permit recovery to James. Since 1919, the clearly indicated purpose of the Illinois securities laws has been "to furnish information, to protect credulity and ignorance from deception * * * prevent fraudulent and deceitful sales of securities * * *" (*Stewart v. Brady* (1921), 300 Ill. 425, 439, 133 N.E. 310; see also *Martin v. Orvis Brothers & Co.* (1974), 25 Ill. App. 3d 238, 244, 323 N.E.2d 73), and "to protect innocent persons who may be induced to invest their money in speculative enterprises over which they have no control." *Meihsner v. Runyon* (1960), 23 Ill. App. 2d 446, 456, 163 N.E.2d 236.

The facts here show that James had a significant degree of control in the operations of EMC. As a closely held corporation, EMC's management consisted of only four persons. James had a 20-percent shareholder interest in the company and held two offices. Further, James has not alleged ignorance of or reliance upon any fact or omission of fact required to be reported under the Act. Thus, this case is clearly distinguishable from the cases cited by plaintiff. See, *e.g., Gowdy v. Richter* (1974), 20 Ill. App. 3d 514, 314 N.E.2d 549 (employee with no management control in issuer granted remedy of rescission); *Martin v. Orvis Brothers & Co.* (sophisticated investor with no management control granted remedy of rescission).

Finally, we reiterate that "the Securities Law serves a useful purpose and should be construed liberally in this light; however, it is intended to function as a shield for the innocent and not a sword for the investor who, because of the speculative nature of the venture or his own poor business judgment, fails to reap the expected return on his investment." *Burke v. Zipco Oil Co.* (1974), 19 Ill. App. 3d 909, 913, 312 N.E.2d 399.

For the foregoing reasons we reverse the trial court's grant of summary judgment for James. We also find, pursuant to our authority under Supreme Court Rule 366(a)(5) (Ill. Rev. Stat. 1979, ch. 110A, par. 366(a)(5)), that as a matter of law summary judgment should be entered in favor of all defendants and against James.

Judgment reversed.

STAMOS, P. J., and PERLIN, J., concur.