Alfred G. McCONNELL and Alexander H. McConnell, d/b/a Odessa Petroleum Development, Plaintiffs-Appellees,

v.

Michael SURAK and Randall Lane, d/b/a S & L Oil Company, Defendants-Appellants.

No. 84–2885.

United States Court of Appeals, Seventh Circuit.

Argued May 29, 1985.

Decided Sept. 30, 1985.

Jon R. Pactor, Indianapolis, Ind., for defendants-appellants.

James F. Gebhart, Chapman & Cutler, Chicago, Ill., for plaintiffs-appellees.

Before FLAUM and EASTERBROOK, Circuit Judges, and WEIGEL, Senior District Judge.[*]

* The Honorable Stanley A. Weigel, Senior District Judge for the Northern District of California, is sitting by designation.

FLAUM, Circuit Judge.

This appeal stems from a diversity action filed by the plaintiffs, an Illinois partnership and its partners, against the defendant, an Indiana partnership and its partners, to rescind the plaintiffs' purchase of certain oil securities from the defendants. The plaintiffs claimed damages under both federal and state securities laws. The district court, 593 F.Supp. 1096, granted the plaintiffs' motion for summary judgment and awarded $106,007.22 in damages. We affirm.

### I.

The plaintiffs Alfred G. McConnell and Alexander H. McConnell are partners in plaintiff Odessa Petroleum Development (collectively referred to as "Odessa"). This partnership was formed in August 1982 as a vehicle for the partners' investment in oil and gas leases offered by the defendants S & L Oil Company and its partners, Michael Surak and Randall Lane (collectively referred to as "S & L").

On August 27, 1982, Odessa purchased from S & L a fractional undivided one-eighth interest in oil and gas leases for property located in Crawford County, Illinois, pursuant to a participation agreement. For this one-eighth interest, Odessa paid S & L $68,000. Following its purchase, Odessa received only one royalty payment in the amount of $510.15 from S & L.

Prior to the sale of this one-eighth interest to Odessa, S & L did not register the interest with the Illinois Secretary of State (the "Secretary"), but rather merely submitted a Form 4H report of sale to the Secretary on November 1, 1982, after the sale had been completed. Form 4H is filed pursuant to section 4 H of the Illinois Securities Law of 1953 ("Securities Law"), ILL. REV.STAT. ch. 121½, § 137.4 H (1983), and provides an exemption from registration

under certain circumstances. Upon receipt of this form on November 17, 1982, the Secretary notified S & L the next day that the report of sale could not be accepted for filing because it was not received within thirty days from the date of the sale pursuant to subsection 4 H. The Secretary thus concluded that the sale to Odessa was not eligible for the subsection 4 H exemption from registration and that Odessa might thus be able to rescind the transaction under subsection 13 of the Securities Law, ILL.REV.STAT. ch. 121½, § 137.13.

On January 3, 1983, S & L wrote to the Secretary, claiming that the form had not been mailed within the statutory thirty-day filing period due to an oversight by one of its attorneys. S & L explained that it immediately sent the report of sale to the Secretary when it discovered this oversight. In a letter to S & L on February 23, 1983, the Secretary explained that it was closing its files and would not decide whether S & L was entitled to an exemption under the Securities Law.

On March 28, 1983, Odessa sent a letter to the Secretary to find out whether S & L had ever filed a report of sale. On April 6, 1983, the Secretary notified Odessa by letter that S & L had submitted a report of sale, but that the report had not been acceptable for filing. Upon learning of this failure to file, Odessa sent a letter to S & L on April 18, 1983, stating that it was electing to rescind its purchase of the one-eighth interest pursuant to subsection 13 of the Securities Law. Odessa sought the return of the $68,000 purchase price plus 9% interest less the amount of the royalty already paid to Odessa. S & L refused to rescind the sale and return the purchase price.

Following S & L's refusal to rescind the transaction, Odessa brought an action for rescission against S & L under subsection 13 of the Securities Law, ILL.REV.STAT. ch. 121½, § 137.13, and section 12 of the Securities Act of 1933, 15 U.S.C. § 77l (1982).

The parties filed cross-motions for summary judgment. The district court granted Odessa's motion on the state securities count, awarding $106,007.22 in damages plus interest and costs. The district court held that S & L had failed to meet the strict requirements for exempting its sale to Odessa because S & L did not file a Form 4H report of sale with the Secretary within thirty days of the date of the sale and because the sales transaction did not meet the requirements for application of the sophisticated investor exemption of subsection 4 D, ILL.REV.STAT. ch. 121½, § 137.4 D. Thus, the court held that Odessa was entitled both to rescind its purchase and to recover damages. The district court also found that the count based on the federal securities laws had been rendered moot because it was based on the same facts as the state securities law count and because a favorable ruling by the court on the federal count would not entitle the plaintiffs to any greater relief than what they would recover under the state securities law count.

On appeal, S & L argues that (1) the Securities Law does not give a purchaser of an interest in oil and gas leases the right to rescind the transaction merely because the seller of the interest fails to submit a report of sale to the Secretary within thirty days of the sale, (2) the district court erred in holding that S & L was not entitled to assert any equitable defenses, and (3) even if the report of sale requirement must be strictly enforced, the sales transaction qualifies for the sophisticated investor exemption of subsection 4 D. We will address these arguments below.

## II.

■ Under Rule 56(c) of the Federal Rules of Civil Procedure, a district court shall render summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R. CIV.P. 56(c). In reviewing a district court's grant of summary judgment, an appellate court must view the entire record and the inferences drawn therefrom in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Cedillo v. International Association of Bridge & Structural Iron Workers,* 603 F.2d 7, 11 (7th Cir.1979). Applying this legal standard to the facts of the present case, we hold that the district court properly granted summary judgment to Odessa.

Subsection 5 of the Securities Law [1] provides that all securities must be registered in Illinois prior to their sale unless such securities are themselves exempt under subsection 3 or unless the sales transaction is exempt under subsection 4. ILL.REV. STAT. ch. 121½, § 137.5.[2] If the seller of the securities fails to register them and does not meet the requirements for obtaining an exemption from registration, subsection 13 of the Securities Law provides that the buyer of such securities may void the sale within three years from the date of the sale. ILL.REV.STAT. ch. 121½, § 137.13 A, D. Since the one-eighth interest in oil and gas leases in the present case does not qualify as an "exempt security" under subsection 3 of the Securities Law, ILL.REV. STAT. ch. 121½, § 137.3, we must determine whether the sale of this interest meets the requirements for classification as an "exempt transaction" under subsection 4 of the Securities Law, ILL.REV.STAT. ch. 121½, § 137.4, so that S & L would not have had

---

1. The Illinois Securities Law of 1953 underwent a major overhaul in 1983, with the amended provisions to take effect at various times throughout 1984. Since the events giving rise to this suit transpired before the amendments took effect, we will be analyzing this case under the pre-1983 version of the Securities Law.

2. The parties do not dispute the district court's holding that the sale of the fractional undivided interest in oil and gas leases in the present case was subject to the Securities Law and that these interests were "securities" under subsection 2.1 of the Securities Law. ILL.REV.STAT. ch. 121½, § 137.2–1 (1983).

to register these interests prior to their sale.

Subsection 4 H of the Securities Law provides that a seller of fractional undivided interests in oil, gas, or other mineral leases does not have to register these interests prior to their sale if he sells them to not more than fifteen persons within any period of twelve consecutive months, provided that (1) no commission exceeding 15% of the initial offering price of such securities is paid on account of such sale, and (2) the issuer files with the Secretary a report of sale within thirty days after such sale, setting forth the name and address of the issuer, the total amount and the price of securities sold, the commissions paid, and the names and addresses of the purchasers. ILL.REV.STAT. ch. 121½, § 137.4 H. In the present case, Odessa's purchase of the one-eighth interest in oil and gas leases from S & L occurred on August 27, 1982, and S & L filed the Form 4H report of sale on November 1, 1982. Since it is undisputed that S & L did not file this post-sale report within thirty days following the sale, subsection 4 H cannot serve to exempt the transaction from the registration requirement of subsection 5.[3]

S & L argues that it substantially complied with the reporting requirement by submitting the report of sale, even if it was over a month late, and that Odessa should not be entitled to rescind the entire transaction based on S & L's minor failure to file the report on time. S & L argues that the district court erred in holding that strict compliance with the exemption provision is mandatory. S & L concludes that the Securities Law should be interpreted flexibly, so that the courts can apply equitable considerations in cases like the present one. We reject these arguments.[4]

■ In prior cases dealing with the seller's responsibility to file a report of sale with the Secretary, this court has held that the reporting requirement must be strictly applied since the broad paternalistic purposes of the Securities Law (such as to protect innocent persons who may be induced to invest their money in speculative enterprises) can only be achieved through a literal reading of the statute. *Green v. Weis, Voisin, Cannon, Inc.,* 479 F.2d 462, 464–66 (7th Cir.1973); *Mark v. McDonnell & Co.,* 447 F.2d 847, 849–50 (7th Cir.1971). *See also Gowdy v. Richter,* 20 Ill.App.3d 514, 525, 314 N.E.2d 549, 557 (1974). Furthermore, as the district court correctly held, Illinois law is clear in allowing only statutory, not equitable, defenses to be raised by a defendant in a case involving a failure to register securities. *Gowdy v. Richter,* 20 Ill.App.3d at 525, 314 N.E.2d at 557.[4] Thus, we conclude that the report of

**3.** As the district court quite correctly noted, subsection 4 H has been deleted and a new subsection 4 G has been added to replace subsection 4 H. This new subsection does not require the filing of a report of sale as a prerequisite to claiming the private offering exemption. ILL. ANN.STAT. ch. 121½, § 137.4 G (Smith-Hurd Supp.1985). The new subsection specifically provides that the failure to file this report will not affect the availability of the exemption, but rather that the Secretary of State may simply impose a monetary penalty for the failure to file such a report. *Id.* The interpretative comments to this subsection state that the new 4 G exemption is available whether or not the seller of the securities was aware of the reporting requirement. *Id.,* interpretative comments, at 37. The comments state that under the former subsection, a purchaser had the right to rescind a securities purchase for up to three years from the date of sale if the seller, despite full compliance with the other provisions of the subsection and without any fraud or misrepresentation,

merely failed to file a report. *Id.* The comments thus conclude that the unnecessarily harsh consequences and arbitrary operation of the report filing requirement have been repealed to insure greater equity in the application of the Securities Law and to eliminate what was a classic trap for the unwary. *Id.*

The district court correctly concluded that under the new subsection 4 G, which took effect on January 1, 1984, S & L's sale to Odessa would have been an exempt transaction even though S & L failed to file the report of sale within thirty days after the sale. The interpretative comments to subsection 4 G make it clear, however, that S & L's sale is subject to rescission under the old provision due to S & L's failure to file the report within thirty days of the sale.

**4.** S & L cites several cases for the proposition that the securities laws should be construed flexibly in order to achieve their goal of protecting innocent purchasers of securities rather

sale requirement of subsection 4 H must be strictly enforced. S & L's failure to comply with this requirement thus permitted Odessa to rescind the transaction as long as another exemption did not apply.

■ In addition to arguing that the sale of its securities was exempt under subsection 4 H, S & L claims that the sale was an exempt transaction under the sophisticated investor exemption of subsection 4 D. Subsection 4 D exempts the following transactions from the registration requirements of subsection 5:

> The sale of fractional undivided interests in any oil, gas or other mineral lease, right, or royalty to any bank, corporation, dealer, pension fund, pension trust, employees' profit sharing trust, or to any association or trader buying or selling fractional undivided interests in oil, gas or other mineral rights, in frequent operations, for its or his own account rather than for the account of customers, to such extent that it or he may be said to be engaged in such activities as a trade or business....

ILL.REV.STAT. ch. 121½, § 137.4 D. S & L argues that this subsection disqualified Odessa from any right of rescission under either of two interpretations: (1) assuming that the "buying or selling interests in frequent operations" language only modifies a "trader," Odessa, as a partnership, is an "association," and thus is automatically exempt as a sophisticated entity that does not need the protections of the Securities Law, or (2) assuming the "buying or selling interests in frequent operations" language modifies both an "association" or a "trader," then Odessa, as an "association," is engaged in buying or selling interests in frequent operations so as to constitute a trade or business. We disagree with S & L's construction of subsection 4 D under its

first interpretation and with S & L's conclusion under its second interpretation.

First, we believe that S & L misreads subsection 4 D when it argues that the "buying or selling interests in frequent operations" clause does not modify both an "association" and a "trader." The subsection enumerates six entities to which the sale of interests in oil or gas leases would be considered an exempt transaction. These six entities are preceded by the preposition "to any" and are separated by commas. However, the word "association" does not immediately follow the sixth entity in the list, but rather is separated from this group by the preposition "or to any" and connected with the word "trader" by the conjunction "or." This construction indicates that the Illinois legislature intended the "buying or selling interests in frequent operations" clause to modify both an "association" and a "trader." This is especially true, as the plaintiffs argue, since if the legislature had only wanted the clause to modify "trader," it would probably have drafted the section as follows: "... profit sharing trust, association, or to any trader buying or selling ...."

This interpretation of the "buying or selling interests in frequent operations" clause is also supported by the remainder of the section, which refers to the association or trader buying or selling the interests in oil or gas leases "for its or his own account" to such an extent that "it or he" may be said to be engaged in such activities as a trade or business. Logically, it seems that the word "it" refers to the previously mentioned "association" and that the word "he" refers to "trader." S & L argues that the phrase "it or he" could refer only to a trader since a trader could be an institution or a person. However, as the plaintiffs pointed out at oral argument, S & L's inter-

than terrorizing honest businessmen. *See Condux v. Neldon,* 83 Ill.App.3d 575, 39 Ill.Dec. 139, 404 N.E.2d 523 (1980); *James v. Erlinder Mfg. Co.,* 80 Ill.App.3d 4, 35 Ill.Dec. 275, 398 N.E.2d 1225 (1979). Although we acknowledge that the Illinois legislature has recently amended subsection 4 H to permit a seller to claim the 4 H exemption whether or not he files a report of

sale, we are bound by the cases decided before the 1983 amendments, which strictly construe the filing requirement. As we noted in *Mark v. McDonnell & Co.,* a seller cannot escape responsibility for the consequences of its failure to register without meeting the statutory requirements for invoking the exemption. 447 F.2d 847, 850 (7th Cir.1971).

pretation of the clause in view of the "it or he" language is not consistent with other sections of the Securities Law where the legislature used only a singular masculine pronoun to refer to an entity that could be either an institution or a person. For example, in subsection 4 A, the legislature describes a "vendor" as one who disposes of securities for "his" own account, and in subsection 2 F, the legislature, in defining an "underwriter," states that an underwriter will no longer be classified as such after "he" has completely disposed of "his" allotment of such security. ILL.REV.STAT. ch. 121½, §§ 137.4 A, 137.2 F. Since a "vendor" or "underwriter," like a "trader," could be either an individual or an entity, S & L's interpretation that the legislature used both "it" and "he" to refer to a "trader" is inconsistent with the legislature's actual use of "he" or "his" and not "it" to refer to a "vendor" or an "underwriter." Thus, we hold that the "buying or selling interests in frequent operations" clause modifies both "association" and "trader."

S & L argues that even if the above clause in subsection 4 D is interpreted to modify "association" in addition to modifying "trader," the district court erred when it held that Odessa was not involved in oil and gas transactions in frequent operations to such an extent that Odessa might be said to be engaged in such activities as a trade or business. We disagree. It is clear that Odessa's only investment was the one-eighth interest in S & L's oil and gas leases. As the district court held, "one passive oil and gas investment (all that Odessa has ever made) cannot conceivably comprise 'frequent operations ...,'" but rather district court also noted, and we agree, that even though Odessa's partnership agreement authorizes it to invest in many other interests, Odessa so far has only invested in the one-eighth interest, so no level of frequency has occurred. Furthermore, even if one views S & L's sale to Odessa as a sale to each of the partners individually as traders rather than as a sale to an association, the transaction would still not be considered exempt because the McConnell partners did not individually buy or sell interests in oil or gas leases in frequent operations. For example, Alfred McConnell has made only one investment in addition to the Odessa sale, and Alexander has made only three investments. Neither partner has sold any of his investments. We agree with the district court that the partners, as well as Odessa, do not come within subsection 4 D's frequent operations clause, so that S & L's sale to Odessa of the one-eighth interest was not a transaction exempt from the Securities Law's registration requirement.

The final issue that we must address is whether Odessa should be entitled to recover from S & L's counsel its attorney's fees and costs incurred in defending this appeal pursuant to Rule 38 of the Federal Rules of Appellate Procedure dealing with frivolous cases and 28 U.S.C. § 1927 (1982) dealing with an attorney's liability for excessive costs. It is clear that subsection 13 A of the Securities Law allows a buyer who rescinds a sales transaction to recover the full amount that he has paid to the seller of the securities, as well as interest from the date of payment of the securities and the reasonable fees of the purchaser's attorney incurred in any action brought for recovery of the amounts recoverable. ILL.REV.STAT. ch. 121½, § 137.13 A. Thus, it is clear that since we are affirming the district court's decision, which awarded attorney's fees and interest to Odessa, Odessa will also be able to recover its attorney's fees and costs incurred in defending this appeal from the plaintiffs. However, Odessa also seeks to recover these attorney's fees and costs from S & L's appellate counsel, claiming that this appeal was frivolous and that, as Odessa noted in oral argument, such an award would improve its prospects of ultimately collecting the judgment against S & L.

Rule 38 of the Federal Rules of Appellate Procedure provides that a court of appeals may award just damages and single or double costs to an appellee if the court determines that an appeal is frivolous. FED.R.APP.P. 38. Section 1927 pro-

vides that any attorney who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct. 28 U.S.C. § 1927 (1982). In analyzing whether costs and attorney's fees should be assessed against S & L's counsel under Rule 38 or section 1927, we first have to determine whether the appeal was frivolous and then whether the appellate counsel's persistence in pursuing the litigation is itself evidence of bad faith. *Trecker v. Scag*, 747 F.2d 1176, 1179–80 (7th Cir.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 2140, 85 L.Ed.2d 498 (1985); *Overnite Transportation Co. v. Chicago Industrial Tire Co.*, 697 F.2d 789, 794–95 (7th Cir.1983). *See also In Re: TCI Limited*, 769 F.2d 441, 445–446 (7th Cir.1985) (defining bad faith for purposes of fee sanction); *Knorr Brake Corp. v. Harbil, Inc.*, 738 F.2d 223, 227 (7th Cir.1984) (same).

■ We conclude that the appeal by S & L's counsel was not frivolous or meritless in the present case and that S & L's counsel did not pursue the appeal in bad faith. We note that S & L's counsel supported his position, which had an arguable factual basis, with various cases that adopted a liberal approach to the interpretation of the state's securities laws. Furthermore, as evidence of the harsh results that the strict thirty-day filing rule produced, the Illinois legislature amended this exemption provision in 1983 so that the failure to file a report of sale within thirty days of the transaction will no longer disqualify the transaction from obtaining a registration exemption. *See supra* note 3. We accordingly decline to assess these items against S & L's counsel.

In conclusion, we affirm the district court's well-reasoned decision permitting Odessa to rescind the transaction with S & L and awarding Odessa interest and attorney's fees from the date that Odessa paid S & L for the one-eighth interest.